UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD MAYNARD BUFFIN, JR.,

        Movant,

                                    File No. 1:09-CV-146

v.

                                    HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

        Respondent.

_____/

**O P I N I O N**

This matter comes before the Court on Movant Donald Maynard Buffin, Jr.'s motion

under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Dkt. No. 1.) For the

reasons that follow, this motion will be denied.

**I.**

Movant was indicted on July 29, 2004, for: (1) mail fraud in violation of 18 U.S.C.

§§ 2 and 1341 ("Counts 1-39"); and (2) conspiracy to commit mail fraud in violation of 18

U.S.C. § 371 ("Count 40"). On October 27, 2004, a superseding indictment was filed, further

indicting Movant for: (3) conspiracy to commit money laundering in violation of 18 U.S.C.

§§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(h) ("Count 41"); (4) conspiracy to defraud

the United States of income tax in violation of 18 U.S.C. § 371 ("Count 42"); (5) money

laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(i) ("Counts 43-57"); (6) money

laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i) ("Counts 66-68"); and (7)

criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) ("Count

83"). Movant was tried and found guilty as to all counts on June 14, 2005. This Court, on

November 15, 2005, sentenced Movant to 180 months of incarceration as to Counts 41, 43-

57, and 66-68, and sixty months of incarceration as to Counts 1-39, 40, and 42, all to be

served concurrently. This Court also sentenced Movant to three years of supervised release.

*United States v. Buffin*, File No. 1:04-CR-165 (W.D. Mich. Nov. 15, 2005). Movant's

conviction and sentence were affirmed on appeal. *United States v. Buffin*, No. 05-2667 (6th

Cir. Feb. 14, 2008). Movant filed his § 2255 motion on February 19, 2009.

## II.

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an

error of constitutional magnitude which had a substantial and injurious effect or influence

on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858

(6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-

constitutional errors are generally outside the scope of § 2255 relief. *United States v.

Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion

alleging non-constitutional error only by establishing a "'fundamental defect which

inherently results in a complete miscarriage of justice, or, an error so egregious that it

amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir.

1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal

quotation marks omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows either: (1) "cause" and "actual prejudice"; or (2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the movant could have raised the claim on direct appeal. *Id.*

A court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III.

Movant seeks relief on the ground that the government failed to establish that the proceeds used to convict Movant of money laundering were profits rather than gross income, as required by *United States v. Santos*, 128 S. Ct. 2020 (2008). (Dkt. No. 1.) He argues that if the jury had been properly instructed that the term "proceeds" in the money laundering statute, 18 U.S.C. § 1956, means "profit," he would not have been convicted. (Dkt. No. 2,

3

Movant's Supp. Br. 5.) Movant initially raised additional claims that the district court did

not give a "good faith" instruction to the jury and that his trial counsel was ineffective for

failing to advise Movant of the possible defense of "good faith." (Dkt. No. 5, Am. Mot. 3-

21.) However, these additional claims have been waived. (Dkt. No. 23, Reply to Govt. 3.)

Movant's sole non-waived claim was not raised on direct appeal and is procedurally

defaulted unless Movant shows either: (1) "cause" and "actual prejudice"; or (2) "actual

innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## A.      Cause and Actual Prejudice

To satisfy the "cause" test, Movant must show that "'some objective factor external

to the defense'" kept him from raising the issue earlier. *Coleman v. Thompson*, 501 U.S.

722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Movant argues that

cause is satisfied because of the ineffective assistance of appellate counsel. To make out a

claim of ineffective assistance of counsel, Movant must show that counsel's representation

fell below an objective standard of reasonableness and that counsel's deficient performance

prejudiced Movant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Movant

supports his ineffective assistance claim by contending that appellate counsel was unaware

that there were differing opinions among the circuits concerning the proper definition of

"proceeds" in § 1956. He also contends that his counsel was unaware that the Supreme Court

was in the process of deciding the issue in *Santos*.

The government argues that courts have found it well within the range of competent

assistance for counsel to choose to focus on stronger issues on appeal, as opposed to a weaker argument that is unsupported by current case law. (Dkt. No. 15, Govt. Resp. 10.) Movant, however, contends that his counsel ignored this issue not because of a choice to focus on stronger issues, but because of his failure "to be aware of the facts and the law." (Dkt. No. 23, Reply to Govt. ¶ 54.) Nevertheless, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Smith v. Murray*, 477 U.S. 527, 535 (1986). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim . . . would disserve the very goal of vigorous and effective advocacy." *Id.* at 754 (citing *Anders  v. California*, 386 U.S. 738, 744 (1967)).

Therefore, the fact that this issue was "colorable" because of a circuit split does not mean counsel was ineffective for failing to raise it, even if he was unaware of the split. While Movant suggests that the omitted issue was "clearly stronger than the issues presented," the nature of the circuit split does not support this claim. (Dkt. No. 23, Reply to Govt. 24.) Only the Seventh Circuit had decided to use "profits" rather than "gross income" as the definition of "proceeds" at the time of Movant's appeal. *Santos v. United States*, 461 F.3d 886, 892 n.4 (7th Cir. 2006). The Sixth Circuit, while not entering the "gross-versus-

net-income debate," had always used "gross income" as the definition. *Id.*; *e.g.*, *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996) (finding that proceeds includes "what is produced by or derived from something . . . by way of total revenue"). Moreover, nothing in the record or submitted by Movant indicates that asking the Court to change its definition of a key word in § 1956, based only on a Seventh Circuit decision, would have been more likely to succeed than the three appellate claims counsel did raise. Thus, the Court finds that Movant's counsel was not objectively unreasonable and did not prejudice Movant by failing to argue this issue on appeal.

In the alternative, Movant argues that given the fact that the Supreme Court had granted *Santos* a writ of certiorari prior to Movant's appeal, a reasonable counsel would have at least raised the issue for the purpose of preserving it in the event that the Supreme Court upheld "profits" as the definition of "proceeds." However, there is no Sixth Circuit precedent "holding that appellate counsel should be deemed ineffective for failing to raise a claim that he or she knows will be found without merit solely to preserve it for a later appeal. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010). "[A]ppellate counsel is not ineffective for failing to predict the development of the law." *Id.* (citing *Lott v. Coyle*, 261 F.3d 594, 609 (6th Cir. 2001)). The Court is hesitant to deem Movant's counsel ineffective as a result of hindsight stemming from the *Santos* decision. As *Strickland* warned:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal citations omitted). Therefore, the Court finds that counsel was not objectively unreasonable and did not prejudice Movant by failing to raise the issue on appeal for the purpose of preserving it.

Movant lastly argues that appellate counsel was ineffective for failing to encourage him to file a petition for a writ of certiorari. (Dkt. No. 23, Reply to Govt. 31-32.) This argument is irrelevant to Movant's ability to show cause for his failure to raise his "proceeds" claim on appeal. This argument is also based on a faulty premise. In actuality, "the Constitution does not entitle a criminal defendant to the assistance of counsel for the filing of a petition for certiorari, so counsel's failure to file that petition cannot amount to constitutionally ineffective assistance." *Nichols v. United States*, 563 F.3d 240, 250 (6th Cir. 2009) (citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Ross v. Moffitt*, 417 U.S. 600, 617 (1974)). Therefore, Movant's appellate counsel was not objectively unreasonable and did not prejudice Movant by failing to encourage the filing of a petition for a writ of certiorari.

Lastly, the fact that *Santos*, the basis of Movant's argument, was decided on June 2,

2008, months after Movant's appeal was denied, also does not serve to establish cause. It is true that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). Also, "defendants have generally been allowed to collaterally challenge their convictions where there has been an intervening change in the law after the time for direct appeal has run." *Belle v. United States*, 1998 FED App. 3210 (6th Cir.). However, "the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986).

The government is correct that Movant's claim falls in a middle ground where it is "sufficiently novel to support counsel's decision not to raise it, but not so unavailable to establish cause for the failure to present it." (Dkt. No. 15, Govt. Resp. 10.) While the Court is sympathetic to Movant's position in this "middle ground," Movant's claim was available at the time of his appeal. In 2002, the Seventh Circuit held that "the word 'proceeds' in § 1956(a)(1) denotes net rather than gross income of an unlawful venture." *United States v. Scialabba*, 282 F.3d 475, 478 (7th Cir. 2002). This decision led to a "gross-versus-net-income debate" in the First and Eighth Circuits in 2004 and 2005, although both decided to uphold "gross income" as the definition of "proceeds." *Santos v. United States*, 461 F.3d 886, 892 (7th Cir. 2006). Thus, while counsel was not ineffective for deciding to focus on stronger issues on appeal, this issue was nevertheless available.

Even if Movant did establish cause, he fails to establish actual prejudice. Movant was

convicted of violating § 1956 which states that a person is guilty of money laundering if:

> [K]nowing that the property involved in a financial transaction represents the *proceeds* of some form of unlawful activity, [he] conducts or attempts to conduct such a financial transaction which in fact involves the *proceeds* of specified unlawful activity–(A)(i) with the intent to promote the carrying on of specified unlawful activity; or . . . (B) knowing that the transaction is designed in whole or in part–(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the *proceeds* of specified unlawful activity.

18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) (emphasis added). This Court and the

Court of Appeals used "gross income" as the definition of "proceeds" in the statute. Movant

argues that *Santos* held that "proceeds" always must be defined as "profits." (Dkt. No. 5,

Am. Mot. 11.) However, Movant misinterprets *Santos*'s holding. In *Santos*, a four justice

plurality found that "proceeds" indeed means "profits" in all cases. *United States v. Santos*,

128 S. Ct. 2020, 2031 (2008). However, a four justice dissent found that "proceeds" means

"gross income" in all cases. *Id.* at 2044. The tie-breaking concurrence held that "proceeds"

means "profits" in some cases and "gross income" in others. *Id.* at 2031-32. "Because no

opinion in *Santos* attracted a majority of Justices, the 'position taken by those [Justices] who

concurred in the judgment[] on the narrowest grounds' represents its holding." *United States

v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009) (quoting *Marks v. United States*, 430 U.S. 188,

193 (1977)). As a result, the Sixth Circuit has interpreted *Santos* as holding that "[proceeds]

means profits only when the § 1956 predicate offense creates a merger problem that leads

to a radical increase in the statutory maximum sentence and only when nothing in the

legislative history suggests that Congress intended such an increase." *Id.*; *United States v. Smith*, 601 F.3d 530, 544 (6th Cir. 2010).

Mail fraud involving payments in a ponzi scheme does implicate the merger problem under *Santos*. *See United States v. Van Alstyne*, 584 F.3d 803, 815 (9th Cir. 2009); *United States v. Fernandez*, 559 F.3d 303, 316-17 (5th Cir. 2009). To define "proceeds" as "gross income" could potentially allow Movant to be convicted of money laundering solely for paying the expenses necessary for his mail fraud, such as the issuance of payments to investors to lull them into the ponzi scheme. In that scenario, there would be a "radical increase in Movant's statutory maximum sentence." *Kratt*, 579 F.3d at 562. At the time of Movant's conviction, the maximum penalty for mail fraud in violation of § 1341 was five years of incarceration. (File No. 1:04-CR-165, Dkt. No. 607, Sent. Tr. 8.) In contrast, the maximum penalty for money laundering in violation of § 1956 was twenty years. (Presentence Rep. 1.) Nor is there any indication that Congress wanted "a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime." *Santos*, 128 S. Ct. at 2027. Therefore, because of the potential merger problem, "profits" is the correct definition of "proceeds" for Movant's case.

However, Movant still cannot establish prejudice. "As for 'actual prejudice' . . . in order to obtain collateral relief, the defendant must show that the error in the jury instruction was so prejudicial that it infected the entire trial resulting in a violation of due process; it is

not prejudicial merely because it is undesirable or erroneous. *Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 169 (1981)). "Prejudice is established by showing that the constitutional error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Movant was not prejudiced because sufficient evidence existed to convict him of money laundering, even if the jury had been properly instructed to use "profits" as the definition of "proceeds."

Although Movant is correct that the payments made to investors consisted of funds received from other investors, there is significant evidence that Movant made a profit. There is uncontradicted testimony that Movant received a net profit of $264,549 which he used for personal purchases:

> Q      I see. So those people were represented that Mr. Buffin would take care of their account, but the money never got passed on to the larger account?
>
> A      Correct.
>
> Q      And he spent this money he received how, sir?
>
> A      He made payments to banks, made his house payments, gave money to Resurrection Life Church, paid for his Cadillac, monthly Escalade payments, payments to retail establishments, checks to his wife, checks cashed, cash withdrawn, landscaping, property taxes, restaurants, so on.
>
> Q      So he basically spent all the money?
>
> A      Yes.
>
> Q      For his everyday purchases?

11

A      Correct.

Q      Can you tell us whether Mr. Buffin reported any of this income he
       received to the IRS on his returns in those years?

A      He did not report any.

(File No. 1:04-CR-165, Dkt. No. 477, James Flink Test. 250.)

The record demonstrates that Movant would still have been convicted of violating the

promotion prong of § 1956 for receipt of this profit. It is a violation of § 1956(a)(1)(A)(i)

to conduct a financial transaction with the proceeds of an unlawful activity, "with the intent

to promote the carrying on of specified unlawful activity."  18 U.S.C. § 1956(a)(1)(A)(i).

According to the record, Movant's profit consisted of money he received directly out of

investor funds:

Q      On what account is that, if you can tell me?

A      Yeah, I can tell. These were checks written to cash out of -- four of
       them were written out of Access Financial Group and one of them was
       written out of Sanctuary Ministries.

Q      So he basically just wrote himself a check to cash out of investors'
       funds?

A      Correct.

Q      And then there's $45,000 of investors' funds deposited into his
       personal account?

A      Yes.

(File No. 1:04-CR-165, Dkt. No. 477, Flink Test. 249.)  The government established that

these funds, from which Movant received payment, were funds Movant had helped procure

in his role as "manager" within the illegal operation.  (*See* File No. 1:04-CR-165, Dkt. No.

471, Beemer Test. 221.)  Accepting money as payment for one's role in an illegal activity

satisfies the promotion prong of § 1956.  *See United States v. King*, 169 F.3d 1035, 1039 (6th

Cir. 1999) (citing *United States v. Westine*, 1994 FED App. 5144 (6th Cir.)).

The record demonstrates that Movant would also have been convicted for violating

the concealment prong of § 1956 based on his receipt of profits.  The record establishes that

Movant filtered some of his profits through a bank account for the fictitious church, His Will

Ministries, which he used for personal purchases:

> Q      And the next line there, checks and transfers payable to His Will
>        Ministries, there was another 20 of those checks?
>
> A      Yes.
>
> Q      That is $85,000?
>
> A      Correct.
>
> Q      And this is investors' funds?
>
> A      Yes.
>
> Q      And can you tell us whether or not he -- who wrote those checks?
>
> A      The checks payable to His Will Ministries were signed by Diane Boss,
>        Don Buffin, and Jeff Visser.
>
> Q      So after he took over the checkbook, he and Mr. Visser made checks
>        payable to His Will Ministry?
>
> A      Yes.

(File No. 1:04-CR-165, Dkt. No. 477, Flink Test. 248-49.)   It is a violation of

§ 1956(a)(1)(B)(i) to conduct a financial transaction knowing that it is designed to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). "[A] variety of types of evidence have been cited by this and other circuits as supportive of evidence of intent to disguise or conceal. They include, among others . . . highly irregular features of the transaction." *United States v. Monea*, 2010 FED App. 0279N (6th Cir.) (quoting *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1475-76 (10th Cir. 1994)). "The use of fictitious accounts indicates structuring the transaction to avoid attention, and is a highly irregular feature of the transaction." *United States v. Aguilera-Meza*, 329 F. App'x 825, 831 (10th Cir. 2010).

As the record indicates that Movant would have been convicted of both the promotion and concealment prongs of § 1956 using "profit" as the definition of "proceeds," Movant was not prejudiced by the use of "gross income" instead of "profit."

**B.    Actual Innocence**

Movant also argues that his claim is not procedurally defaulted because he is actually innocent. The government argues in response that "actual innocence" only applies to underlying offenses and not sentencing issues, and, thus, does not apply to Movant. (Dkt. No. 15, Govt. Resp. 11-12.) However, the government misconstrues Movant's claim as a sentencing issue. Movant's argument is that he is innocent of money laundering, which was not a sentencing enhancement, but rather an underlying offense for which he was convicted.

(*See* File No. 1:04-CR-165, Dkt. No. 589, J.). Therefore, if Movant can establish that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him,'" then his claim is not procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).

Nevertheless, for the same reasons Movant fails to show prejudice, he fails to show actual innocence. As demonstrated above, Movant is guilty of money laundering, regardless of which definition is used for "proceeds." As Movant has failed to show cause and actual prejudice or actual innocence, his claim is procedurally defaulted.

The files and records in this case conclusively show that Movant is entitled to no relief under § 2255. Accordingly, no evidentiary hearing is required to resolve the merits of the pending motion. For the reasons stated herein, Movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 must be denied.

Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability to Movant. To warrant a grant of a certificate of appealability, Movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court does not believe that reasonable jurists would find its assessment of Movant's claim debatable or wrong. Accordingly, a certificate of appealability will be denied.

An order and judgment consistent with this opinion shall be entered.

Dated: July 15, 2010     /s/ Robert Holmes Bell
             ROBERT HOLMES BELL
             UNITED STATES DISTRICT JUDGE